Is it screen? Scrine. Scrine. If I had guessed the other, I would have missed on that. Good morning. How are you? Good morning, Judge. I'm doing fine. How about you? Good. You may proceed. Thank you. May it please the Court. Counsel. Mr. Parker brings this appeal from what the District Court expressly designated as a Mr. Parker appeals because the District Court imposed a harsher derivation from the amended guidelines than one originally was sentenced at his original sentencing, when the only thing that had changed was Mr. Parker's good conduct and post-sentencing rehabilitation. That consisted of him taking educational, vocational training, completing successfully a 40-hour drug treatment program, and no conduct violations. Do you think Pepper requires that the Court make a downward variance or whatever you might call it? I think, Your Honor, thank you for the question, and I believe that Pepper's will direct the Court to that it must consider, as with 3553A factors. Yeah, they're different, but, you know, the Court can consider but not do it. Certainly. My question is, do you think Pepper requires him to go down a few months? Our position is obviously that he should, but that is required. I don't think Pepper requires the Court. I think the Pepper requires the Court to consider. That answers my question. Okay. It's a viable factor to consider. And in this case, it was especially viable. The nonconduct violations actually are more important than they may appear. This was a reason given by the government at his original sentencing as to Mr. Parker's violent nature, all the conduct violations that he had while he was incarcerated. Well, Mr. Parker incurred no conduct violations in his subsequent incarceration. In his post-sentencing, conduct was exactly and precisely what the district court had asked him to do, and yet the district court imposed a harsher derivation from the amended guidelines. Mr. Parker had done what he was asked, and I believe there's a direct quote from the district court at the original sentencing where he says, I have no doubt that with proper training and treatment, Mr. Parker can become an individual that will not come back into the courtroom. Okay. Why is this case so unique that you know how much deference we give, that the Supreme Court has told us to give to the district court in sentencing? I mean, I understand everything you say, but it seems like the ball is in the district court's court within its discretion. I mean, how would we even write an opinion and say it was an abuse of discretion? Well, Your Honor, it appears that Mr. Parker's good conduct flies in the face of the district court actually giving him a harsher derivation from the amended guidelines and not even mentioning it, not even considering it until after the district court had imposed sentence. But I thought the district court did consider his participation in vocational classes and a drug education course. I think the district court responded. It asked counsel, was there anything else? And I said, I don't think the district court had considered that behavior. The district court said, don't get me wrong. Good behavior is its own reward. And I think that, coupled with a harsher derivation, flies in the face of what is a substitute of unreasonableness and Mr. Parker's good behavior. I would like to spend the rest of this time trying to persuade you that Mr. Parker should receive a lesser sentence, but I also feel compelled to address the pending motion before the court, and that is our motion to dismiss the government's cross-appeal. The strongest reason we have for that is that the government filed its motion to dismiss its appeal. On this very case, on that very issue... Well, no, it's not this very case. It was an earlier case. It's the same facts. Counsel had a different number, right? It was resolved by a final judgment. By the way, I think some of these questions' answers are helpful to you. Some of my questions are helpful to you. It was a completely different appeal, right? This is a Dorsey hearing. There was no appeal in the first one. What did they move to dismiss? A notice of appeal, a motion to appeal. So they just moved to dismiss their own motion. There was never any arguments on the merits. Right. No hearings. Well, it was a notice of appeal filed, and I'm sorry, tell me if I've got the facts wrong. We looked it up on CME-CF, and I saw a case there. You're correct. It's a new case. The facts, the circumstances are no different. In other words... Tell me about the previous case, what I would call the direct appeal. I thought there was an appeal filed. I thought the government... The government appealed. ...moved to dismiss that, and this court granted it by order and ended the case. Right. Final judgment. The argument is that it's the same issue, the career offender issue, and that's why the government knowingly, voluntarily, and intelligently withdrew that issue. They made a motion. In fact, their notice of appeal states, we wish to appeal the judgment of the district court on the career offender guideline issue. They asked for extensions of time to consult with the solicitor general to determine whether to pursue this career offender appeal. Then they actively filed their motion to dismiss. And we didn't remand in that case for a Dorsey hearing. No. Now, are you familiar with the Walker case of the Third Circuit? The Third Circuit case? Yeah, the Third Circuit case named Walker. Yes. October 8th of last year. It is one that went to the Supreme Court. They vacated in light of Dorsey. The Third Circuit remanded in light of Dorsey, and the Third Circuit said that it's de novo, everything starts again, because it was the same case going up and down. Your Honor, I don't disagree with that, but what I distinguish is that this case was never vacated or remanded. There's a difference. Now, wait. This case, counsel, you mean the previous appeal? Yes, correct. I'm sorry. Don't call it this case. I think that's terrible for you. I apologize. I think you're dead in the water if it's this case. Okay. That case was never vacated. And so I think there's a difference. In fact, it sounds like you're getting to the point of this, whether it's a full resentencing or not. And in this case, it is not. It was never vacated. And trust me, this is no vacation. Sorry. That didn't happen in that case. This is a limited resentencing. I explained at the beginning. The district court labeled this specifically a Dorsey resentencing, a Dorsey hearing. Regardless, I think you've got the stronger side of the argument on the career offender because of King and the plain language of the guidelines. Your Honor, I'm prepared to address that as well. I think King applies to Mr. Parker's case. I don't think he should be labeled as a career offender. I don't feel it's appropriate to discuss it because of our motion. But I'm willing to, if the court were to say we are not going to dismiss it against cross-appeal, I'll answer those questions. Well, how do you face up to the Slade case then? Your Honor, the Slade case is distinguished because in Slade they actually added an additional point. Each case was one point, but the aggregate, the consecutive sentences were turned into two. We don't have that in this case. We've got a four-year sentence and a seven-year sentence, each of which would have gotten three points. So the aggregate is no different under the guideline calculation than it would have been had they been separate. Yes, but it says use the aggregate sentence of each imprisonment if they're consecutive. It has the word each in there. Which would make 11, correct? It is no different. The points are still the same. Yes, but you have to look at each of them. You know what the Fourth Circuit's trying to say? If they are concurrent, you don't look at each of them. You do the longer one, right? But if they are consecutive, you have to use each of them. Therefore, it counted. The violent one counted, so to speak. Tell me I'm wrong. Well, I'm sorry, but I believe you are wrong. Tell me why, though. Because what the government is trying to do and what would, if you are correct, it would be bootstrapping a lesser sentence onto a longer sentence to make them both a qualifying predicate, which is not the case. The longer sentence is a non-qualifying predicate. And to add that shorter sentence to the longer sentence, even though they make an aggregate of 11, does not mean that that shorter sentence got points. It received no points. What's the language in the guideline that tells you to go to the longer sentence? That is for a 1.2, I'm sorry, 1.1E, I believe, which discusses if the defendant received two or more prior sentences as a result of convictions for crimes. I'm sorry, that? It's A2, isn't it? Yes, Your Honor, I apologize. A1.2A2? But tell me if I got them wrong. 1.2, that's correct, where it says to. . . Yeah, but that's only, you only use the longer one if they are concurrent. It says concurrent, but it gives examples. Footnote 5, it gives examples of consecutive sentences. But even under that example, it's still, you still get the ambiguity. It doesn't say if there's a shorter qualifying and a longer non-qualifying, then you put them together and make it qualifying. It does not say that, even in the footnote. In fact, the district court said at sentencing, if this were clear, we wouldn't have all this confusion. So is that your, is that, because I guess my question was not when it's concurrent, but when they're consecutive. What part of the guideline is telling us to look at the longer one? It's ambiguous. Okay, so you're saying then we have to fall back on a rule of lenity like King did. Exactly, exactly. And the ambiguity is perhaps a term aggregate. It does not tell us what Mr., what Judge Riley, excuse me, is suggesting. Well, what about the word each, though? See, I'm focusing on the word each, not the word aggregate. There's still no, there's still nothing that tells us that that would make it qualifier. I'd like to reserve the rest of my time for rebuttal, if I may. You may, thank you. Thank you. Morning, Mr. Farrell. Morning, Your Honors. If it pleases the court, counsel. Again, my name is Larry Farrell. I'm Assistant United States Attorney in the Eastern District of Missouri, and it's my privilege to be here today to represent the United States government. And it is the government's position that the district court committed significant procedural error in imposing Mr. Parker's sentence because the court miscalculated the applicable guideline range by failing to find that Mr. Parker was a career offender. And for that reason, this court should remand the case to the district court with the instruction that Mr. Parker Now, so before you get too far down the road, my clerks find all kinds of cases where in a similar case with a previous different case, the defendant fails to raise an issue, and we wham them on all the other appeals and say they cannot raise it again. Why shouldn't that rule apply to the government, too? There are two reasons, Your Honor. First of all, the government didn't waive its appeal in those cases. No, you dismissed it. You moved to dismiss it. Worse yet. Well, we dismissed the appeal. We filed the notice of appeal, and after consideration, the defendant did not appeal, and other factors that came into play, it was decided that we would dismiss the appeal. But what happened after that was the defendant took an independent action to set that sentence aside. He filed a petition, a habeas corpus petition, saying that that sentence was constitutionally defective, and he asked Judge Sippel to set it aside, to hold it for naught, and Judge Sippel did that, just exactly as the defendant said. He set that sentence aside. Now, I have not found any case where a court has set a sentence aside and then the parties came back where the court held that you were bound by the actions in that previous sentencing that was set aside, the defense or the government, either objections that you made or didn't make or whether you pursued an appeal or didn't pursue an appeal. Isn't a Dorsey hearing limited to Dorsey issues? No, sir. What happened in Dorsey, the Supreme Court said that we should have applied new mandatory minimums to defendants like Dorsey that fell into that middle area. And because of that, he filed an action to set that conviction aside, and we agreed because we believed it was constitutionally infirmed. He was not sentenced with the right mandatory minimums. You're right. The district court's order says petitioners filed a motion to vacate. Yes, sir, originally. Yes, sir. And to be resentenced, and that was granted. Yes, sir. Your position is that whole other case and sentence has been vacated. The sentencing was vacated. It was gone. It was taken away at the defendant's request. So now we come back for a new sentencing. If this were an issue where the case had gone up to appeal and been remanded, that might be a different matter. Counsel, I think you want it to be called a remand if you look at the Walker case of the Third Circuit. Well, Your Honor, I'll be honest with you. The court is ahead of me because I have not looked at that particular case to know how that went. Because that is all one appeal. It goes to Supreme, Supreme vacate in light of Dorsey, comes back to Third Circuit. They remand for resentencing in light of Dorsey, and the Third Circuit says it is a de novo resentencing, and the district court's supposed to do a full, you understand, full resentencing. Yes, sir. And it is. It was a de novo sentencing. If you look back at the transcript, that sentencing was conducted just like every other sentencing, with nothing carrying over from the previous sentence. The court had a pre-sentence report done, presented to the court. In the court, the parties made objections to the pre-sentence report. The parties argued as to the guidelines. The court determined the guidelines. The parties then argued departures. Then the parties argued with regard to variance, and the judge made all those findings and sentenced the defendant with the right to appeal. That is a full resentencing. There is absolutely no difference whatsoever than any other sentencing that's been before this court. It was exactly the same. And that's because Dorsey allowed him to set aside that previous conviction, I mean that previous sentence, and we went back to square one. There was nothing, nothing that we were bound to. For example, the defendant did not appeal at all from that first case. He didn't appeal at all. Is he bound because in that first case the judge found that the criminal history was substantially underrepresented? He didn't appeal that. That was a finding from the judge. Can he appeal it now? Yes, he can. Yes, he can. Both parties were open to present any argument at this sentencing. We did present that argument without restriction. And I think it's very important to know. Well, now, before you buzz by that, did you really make the district court rule on that issue? Absolutely. Well, I don't, you're absolutely, you're like me, I think you overstate, Mr. Farrell. Oh, sir. Because you didn't, you said you were recounting it as part of the history. Oh, judge, if you'll look at that transcript right here, it will start at page four, the transcript. I say, he says, are there any objections to the guideline range? And I said, yes, sir. And I said, yes, sir, your honor. You go to page six, and I say, so, you know, at page six, I say, so the government would have to take the position here today that we have, that we do believe that this is an appropriate finding, that his career offender guideline offense level would be 34, and the base offense level minus three to the offense level 31, criminal history category six. Counsel, is this where you're reciting the history? No, sir. I said in any way. Where is it where you recite the history and say this is part of the history of the case? Yes, sir. In the beginning, I told the court, we've been here before. Right. And I recited and made my long argument before, and I knew the court didn't want me to sit there and go through that long 30-minute argument once before. Well, your next sentence, you say, that is the government's position. Yes, sir, as to what the appropriate sentence should be. I would assume that's not a history statement. Absolutely. And if you look further, to show that we made the objection when I said it's the position at page seven, position of the government as far as what the appropriate range should be. That's starting line 20. And then what's really interesting is the court says on page seven, line 23, I understand. So your objection to the guideline calculation, again, is that I should have counted those offenses or convictions separately and not aggregate them. Et cetera. And if I did, then I would find Mr. Parker to be a career offender rather than just sentence him. And I said, yes, sir, that is in essence the government's position. He goes on. He says to defense counsel, all right, any response to Mr. Farrell's position? Defense counsel says, no, your honor. And he said, well, do you agree with it? He says, no, I don't agree with that. I'm sorry, your honor, we do not join in Mr. Farrell's objection. And he said, we are strenuously opposed. And he said, we believe King controls. And then the court on page nine said, if you want to take that up on appeal, I think it's pretty clear what the relative positions are. And what the court's ruling is, unless we need to make a further ruling. There is no question that I stated for the court this is what they should find. And that was my position. And I objected to the pre-sentence reports finding otherwise in this case. Now, what is really interesting. Let's go to the merits. Okay. For your time here. Thank you, Judge. I apologize. May I make one point before? As simply to say, I asked the court to take into consideration that when the government made that objection, the defendant didn't say, oh, wait a minute. The government has waived their right by withdrawing their appeal to make this objection. They stood silent. They did nothing. And when the time to object, if they were going to object, was before we made the argument to the court. Now they're asking this court to come in and say, oh, don't look at what we had allowed the court to do. And I want to say the last thing is Mr. Scrine in his brief. But he says we didn't make that objection because we didn't realize that an objection basically had been made. Now, you've just heard the record. And so to go to the merits of the case, Judge Riley, this case turns on just a very few short things. And King is definitely not one of them. King has no application in this case at all because King dealt with concurrent sentences. And the rule governing concurrent sentences says that you use the longest sentence. And King said, oh, wait a minute. Use the longest sentence. Maybe that means only the non-predicate sentence in this case because it was the longest. And we're going to apply the rule of lenity to it. And, therefore, we're not going to include the predicate offense. But this case is entirely different. I frankly thought that counsel might concede that King does not apply because I don't know how. Counsel, rather than addressing that, address the point that he says it didn't add any real points on. Even though it's consecutive, it doesn't really add points on, and so, therefore, it really shouldn't count. It's not in the aggregate. Yes, sir. Judge, what has happened here is in the brief, even though at the court the argument was King applies, King applies, we pick the longest sentence, which there's no basis for that at all in the section that applies to consecutive sentencing, which says take the aggregate sentence. So what has happened now in the brief, I believe, is there's a recognition King clearly did not apply. Justice Slate said it didn't. Counsel, here's what we do. You're leaving out the word each. It says use the aggregate sentence, but then it says each imprisonment. Your Honor, it confuses me. My rule book, are you referring, excuse me, yeah, it's 4A1.2A2. If consecutive sentences were imposed, use the aggregate sentence of each imprisonment. Of each imprisonment. Yeah. Okay. So what meaning do you give to the word each? Well, each in this case means both. Well, no. Each in life doesn't usually mean both. Well, when you say you use each of them, when there are two, meaning you use both of them. You don't use one. When you use each of them, you're using one and one. And in this particular case, Judge, what has happened is that they have changed their arguments. And the argument now. Now, you've gone back to attacking them rather than helping me on what aggregate and each mean. You'd help me. What aggregate sentence means? You'd help me in this case if you'd tell me about points, aggregate and each. If you could relate those together, you'd help me. Okay. The rule says that if the sentences are consecutive, all right, when we're determining, when we combine sentences, first of all, you have to combine them into a single sentence. And the rules, by the way, and the guidelines refer to sentence all the time, never conviction, because it's sentences that gets criminal history points. It says that when you apply, when you combine them as a single sentence and they're consecutive, you use the aggregate sentence of imprisonment. Now, that's the language. Left out the word each, counsel. Maybe my book is different. It says use the aggregate sentence of each imprisonment. We don't have it mistyped, do we, everywhere? Tell me if each is not there. I think you read it when you looked at it. No, sir, it's not there. If consecutive sentences were imposed, use the aggregate sentence of imprisonment. That's what it says. The word each is not there. No, sir, it's not. Okay. It's mistyping my stuff. I apologize. I apologize. That was causing me a lot of confusion, Judge. Because what it says is we use the aggregate sentence in order to determine how many criminal history points are applied under 4A1.1. What does aggregate mean? And here's where I say, in King, they said we have ambiguity. Because what does the longest sentence mean? That's ambiguous. It could just mean the longest sentence. And so then I said there's two plausible possibilities. One is that we use only the longest sentence, which here happens to be the non-predicate felony.  All the requisite prior violent felony convictions because you had one additional concurrent conviction. But that does not work here. And that's what they're trying to argue. They're trying to argue that the rationale of King now switches over and applies. King applied it to the longest sentence. Let's now apply it to the aggregate sentence. That's ambiguous. Let me ask a question in a different context. Let's say his convictions in paragraph 35, which include this resisting arrest, that's your crime of violence, right? Right? That's the one that received the lesser amount of time? Yes, ma'am. It received a four-year sentence. Let's say career offender is not on the table and you've aggregated these. Yes. So this is a single sentence. Yes. Then you can't add another point because you've got an extra crime of violence. Right. So you would agree then that that subsection F, I'm sorry, E, sort of doesn't have a role any longer when you interpret the aggregate sentence in the way that you're saying it? If I understand correctly, Judge, and I may not, but I think I understand. That's right. If you aggregate them, then you are to use that new sentence and apply, like here, seven years and four years. You take the aggregate sentence. You take seven and four. You combine them. You move over and you see under 4A1.1 where that leaves you. Okay. And so then you can't add for an extra crime of violence because it's already been taken into account in your single sentence. Well, like in Keene, you may have a situation in Keene where the extra crime of violence did not count. That's what happened in Keene. Well, and that's what would happen here, right? In this case, if sentencing by the district court here. I'm sorry? The way the district court sentences did not give that extra point. That's correct. They did not. They did not. I know I've only got 30 seconds, Judge. I ask you to do this. When they try to apply the Keene rule, the rationale to this section, there is nothing ambiguous about the aggregate sentence. It is a phrase we've always used. We know what it is. It means both sentences. If both sentences are used in that single sentence, a four-year sentence and a seven-year sentence to make 11, that's the aggregate sentence. It is then used to calculate the criminal history points that both of those offenses are counted under 4A1.1. And that's exactly what happened here. You cannot apply the rule of lenity when there's not an ambiguity. What would be the other possible construction of what aggregate sentence means? There is none. It means both. It always means both. You don't have to guess which one of the two gets points. Always you will get points with the aggregate sentence. So the rule of lenity, there is no ambiguity, and even if there was any ambiguity in this case, there is no two plausible explanations. And if I could say for the last thing, you asked me the question, Judge, what about the new theory, well, aggregate sentences mean only if both sentences were counting for one point less than 60 days. We add them together. Where did that come from? If the guidelines had intended for aggregate sentence to apply only if both together elevated the criminal history points, they would have said so. They did not. They said you aggregate the sentences, period. And that is exactly what should have been done in this case. Those sentences were aggregated. The 11-year sentence is applied to 4A1.1A, and that is the end of the case. I apologize, Judge. I know that I kind of have run over. But I simply say to the court, just like in that theory, Slade, that is not what happened in Slade. I can find, at least I can find, I've scoured it stem to stern. Nowhere does it say what the original two convictions were, how much they were. That the two added together, they made 90, but you don't know if one was 80, which already was accredited with two points, or not. You do not know that. So you can't say Slade stands for that proposition. It clearly does not. And the example that was given, if you take Mr. Skrine's example that you just mentioned, you would have, if you had a 5-year non-predicate and a 10-year predicate, even under King, if they're concurrent, the 10 is going to count. Using the new analogy that the defense has proposed, if we now make them consecutive, it doesn't count. Because both of them have three points, they cannot be elevated together to rise the criminal history points. So now, even under King, when they were concurrent, they count. But under this new idea, they do not count. And this is a new idea without any basis in law or fact. Your time has expired. Thank you. Judge, I know it is. Thank you so much for your kindness. You extended me additional time, so thank you very much. Brian? Thank you, Your Honor. Your Honor, our position, first and foremost, this was a Dorsey hearing. 2255 was the vehicle by which we had agreed. The judgment says amended judgment. There's indications this is not a brand-new case. In fact, Mr. Farrell argued at sentencing, he said, Judge, I'm not arguing, Judge. I'm just going over what happened. So it's our position that this was a continuation. And there was no official vacating of any sentence. The pre-sentence report that Mr. Farrell is talking about is a recalculation. Well, wait a minute. I don't think he can say it any more official than the order that you or your client made a motion to vacate, and the court granted it. Or set aside. 2255 is. Well, you made a motion to vacate, to be resentenced, and the court says petitioner's motion is granted. Your Honor, the district court described it as a recent, as a Dorsey hearing. The judgment read amended judgment. Let's go on your time back to this explanation of the consecutive sentences. Certainly, Your Honor. Mr. Farrell states that the Slade case absolutely says that consecutive sentences means that you, if one is, and it's ambiguous as to which one, he's stating that the ambiguity is resolved in the favor of, against the defendant, which is clearly against the rule of lenity and clearly against King. There's nothing in the record, as Mr. Farrell states, nothing to say how this 90-month sentence was fashioned. Nothing at all. What could be more ambiguous than that? The Slade case is a Fourth Circuit unreported case. I find that that's the only case they can rely on. So this consecutive four points, our position cannot be piggybacked onto the seven to try to make it a crime of violence predicate. It fails. The guidelines tell us to go with the longest sentence, which is the possession, a non-qualifying offense. Well, what's your explanation of the application here of 4A1.2A2 that says if consecutive sentences were imposed, use the aggregate sentence of imprisonment? That it's a distinction without a difference. The aggregate, that each of those received points. You take the longer one to give it points. There were no points assessed besides that. So you take the longer sentence, the seven. Aggregate means to add them together. Certainly. And 11 years makes no difference to four years or seven years. On the points. On the points, correct. And so there's nothing in the guidelines that explicitly tells us that even if it's a lesser sentence, that makes the whole pot spoiled. And therefore, it is a qualifier regardless. If there's even one tiny qualifier in there, regardless of the lengths of sentences, then the whole thing is a qualifier. The guidelines don't tell us this. This is the ambiguity, which ought to be resolved in favor of the defendant. The king does apply here. The government has stated no specificity, which directs us that that lesser sentence should be a qualifier that's a hope and aspiration. But there's nothing that tells us to do that. The best they could come up with was an unreported Fourth Circuit case. Which is cited in King, right? Correct. Put note four. Correct. Your Honors, my time is about up. If there are no further questions. I guess not. Thank you for the opportunity. Thank you. Thank you. Thank you for your arguments, both in the briefs and orally. And we will take it under advisement and be back to you when we can get to it.